# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, # N-92676, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-574-MJR |
| ) | |
| NURSE MALL, ) | |
| NURSE LAING, ) | |
| NURSE MARSHALL, ) | |
| NURSE CHATTEN, ) | |
| NURSE TRIPP, ) | |
| NURSE WILLIAMS, ) | |
| NURSE GREGSON, ) | |
| NURSE MEGEE, ) | |
| DR. OSEMEYER, ) | |
| NURSE RON, ) | |
| DR. OSWALD, ) | |
| NURSE SUZY, ) | |
| NURSE MARTHA, ) | |
| NURSE BRENDA, ) | |
| NURSE KEISHA, ) | |
| NURSE SHELLBY, ) | |
| NURSE JOHN DOE #3, ) | |
| LT. LEE, ) | |
| McWILLIAMS, ) | |
| WARDEN LASHBROOKS, ) | |
| and WEXFORD HEALTH SOURCES, INC.,) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

This matter was severed on May 31, 2017, from *Knox v. Butler, et al.*, Case No. 17-cv-494-SMY, pursuant to Federal Rules of Civil Procedure 20(b) and 21 (Doc. 1). Plaintiff is an inmate at Menard Correctional Center ("Menard"), where he is serving a life sentence. His *pro se* action is brought pursuant to 42 U.S.C. § 1983. The dental deliberate indifference claim

1

severed into this case was designated as Count 5 in the original action, and is described as follows:

> Eighth Amendment claim for deliberate indifference to serious dental needs, against Mall, Laing, Marshall, Chatten, Tripp, Williams, Gregson, Megee, Osemeyer, Ron, Oswald, Suzy, Martha, Brenda, Keisha, Shelby, Nurse John Doe #3, Lee, McWilliams, Lashbrooks, and Wexford Health Sources, Inc., for denying and delaying care for Knox's abscessed and infected tooth, in April and May 2017.

(Doc. 1, p. 6). The portion of the First Amended Complaint (Doc. 2) setting forth the facts relevant to this claim is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Along with the First Amended Complaint, Plaintiff filed a motion for preliminary injunction (Doc. 3), which seeks an order requiring Defendants to provide care for Plaintiff's mouth infection.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## Count 5 of the First Amended Complaint (Doc. 2)

This claim arose on April 23, 2017.  (Doc. 2, pp. 19-39).  Plaintiff began having problems with one of his front teeth, and submitted a request for urgent dental care.  Plaintiff takes insulin shots and oral medication (Metformin) for diabetes twice each day, and takes blood pressure medication daily.  (Doc. 2, p. 19).  Over the next several days, Plaintiff's tooth became very painful when he tried to eat, talk, or brush his teeth.  The pain caused him to lose sleep, and interfered with his daily activities.  His breath became very bad due to his inability to brush his teeth normally.  Plaintiff's mouth became infected and he was spitting out blood and pus daily. (Doc. 2, p. 20).  The tooth became loose and was dangling in his mouth.  On April 30, 2017, Plaintiff woke up around 2:00 a.m. to find blood all over his pillow.  He submitted another medical request for urgent dental care.  *Id*.

Over the ensuing weeks, Plaintiff submitted additional medical requests as his condition

deteriorated. His mouth continued to leak blood and pus constantly. His pain got worse every time he tried to eat, talk, or brush his other teeth. Plaintiff showed his dangling tooth and described his symptoms to numerous nurses who came to his cell, and he asked them for pain medication.

These nurses, each of whom refused to help Plaintiff or give him anything for his pain, include Shellby (on April 30 and May 10, 13, and 15, 2017), Laing (on May 4, 8, 9, 10, 11, 15, and 16, 2017), Tripp (on May 5, 2017), Martha (on May 5, 6, and 12, 2017), Brenda (on May 6 and 14, 2017), Mall (on May 6 and 17, 2017), Chatten (on May 7 and 9, 2017), Marshall (on May 7 and 14, 2017), Megee (on May 7, 10, and 14, 2017), Keisha (on May 8, 11, 16, and 17, 2017), Suzy (on May 8, 2017), Ron (on May 9, 2017), John Doe #3 (on May 12, 2017), Gregson (on May 12, 2017), and Williams (on May 17, 2017). (Doc. 2, pp. 20-29).

Nurse Ron told Plaintiff that Wexford and the State were on a budget, and offered to bring pliers to yank out the tooth. (Doc. 2, p. 24). On May 8, 2017, Plaintiff asked Lt. Lee for help to get medical/dental treatment, but Lee refused to take any action. (Doc. 2, p. 23). On May 9, 2017, Nurse Chatten told Plaintiff that "nothing would happen until lock-down was over." (Doc. 2, p. 23).

On or about May 10, 2017, Plaintiff wrote an emergency grievance to Warden Lashbrooks over the denial of dental care, but he never received a response. (Doc. 2, pp. 25, 31). On May 13, 2017, after Plaintiff requested a crisis team, he was taken to see McWilliams (mental health staff). Plaintiff told McWilliams about his pain and dangling tooth, for which he had been seeking care since April 23. McWilliams promised he would make a referral to the dentist, but failed to do so. (Doc. 2, p. 27).

On May 14, 2017, the prison lockdown was ended and some inmates began receiving

dental call passes for teeth cleaning. However, Plaintiff was not called to the dentist. *Id*.

On May 15, 2017, Laing told Plaintiff she had heard about the grievance Plaintiff filed on her, and knew about his lawsuit against Butler, but she didn't care who Plaintiff cried to, because "she is covered." (Doc. 2, p. 28). Later that day and the following day, Laing refused again to give Plaintiff any pain medication.

On May 18, 2017, the pain from Plaintiff's abscess increased. Shortly thereafter, the tooth completely broke off and he started bleeding profusely. (Doc. 2, p. 29). Plaintiff was rushed to the Health Care Unit, where a dental assistant applied gauze to stop the bleeding. Osemeyer (dentist) told Plaintiff that he would never be placed on an emergency call line for dental care and would remain at the back of the line, as long as Plaintiff kept those teeth in his mouth. *Id.* Plaintiff asked for a partial to replace the missing tooth, and an MRI to determine the severity of the infection. Osemeyer responded that he wasn't about to waste Wexford's money, and said the only treatment Plaintiff would get was to have all his teeth extracted. Plaintiff did receive antibiotics to treat the abscess, and ibuprofen for the pain. (Doc. 2, pp. 29-30).

On May 19, 2017, Shellby told Plaintiff that he "would regret writing a grievance on her." (Doc. 2, p. 30).

Plaintiff's pending motion for preliminary injunction (Doc. 3), seeks testing and/or treatment for his ongoing mouth infection and abscess. He also seeks compensatory and punitive damages for the violation of his constitutional rights. (Doc. 2, p. 32).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on Plaintiff's allegations under Count 5 in the First Amended Complaint, the Court finds it convenient to further divide the claims in this *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim for deliberate indifference to serious dental needs, against Mall, Laing, Marshall, Chatten, Tripp, Williams, Gregson, Megee, Osemeyer, Ron, Oswald, Suzy, Martha, Brenda, Keisha, Shellby, and Nurse John Doe #3, for denying and delaying care for Plaintiff's abscessed and infected tooth, in April and May 2017;
>
> **Count 2:** Eighth Amendment claim for deliberate indifference to serious dental needs, against Wexford Health Sources, Inc., for denying and delaying care for Plaintiff's abscessed and infected tooth, in April and May 2017;
>
> **Count 3:** Eighth Amendment claim for deliberate indifference to serious dental needs against Lashbrooks, Lee, and McWilliams, for denying and delaying care for Plaintiff's abscessed and infected tooth, in April and May 2017;
>
> **Count 4:** First Amendment retaliation claim against Laing, Keisha, and Shellby, for refusing to provide Plaintiff with any pain medication or other treatment after Plaintiff filed a grievance against them.

Counts 1 and 3 shall proceed against each Defendant named therein. Count 2 shall be dismissed for failure to state a claim upon which relief may be granted. Count 4 shall proceed against 2 of the Defendants.

In addition, Plaintiff's allegation that he is still suffering from the mouth infection and continues to need medical attention, indicates that his motion for preliminary injunction should receive prompt consideration.

### Count 1 – Deliberate Indifference – Nurses and Dentists

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily

6

activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates." *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (inmate who was denied his dentures and could not chew his food, and suffered bleeding, headaches, and disfigurement, stated a serious medical need).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes a painful, damaged tooth that became badly infected and interfered with his ability to eat, sleep, and maintain basic oral hygiene. The First Amended Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the prison medical and dental providers (as well as the non-medical Defendants) acted or failed to act with deliberate indifference to a known risk of serious harm.

7

Plaintiff describes daily encounters with a multitude of nurses over a period of approximately 3 weeks. In each case, Plaintiff described and/or showed the Defendant Nurse his dangling tooth and the blood and pus being discharged from the infected area. He told each nurse that he was suffering significant pain, and asked for pain medication. However, not a single one of the nurses gave Plaintiff any medication to relieve his pain, and many remarked that they were not responsible for dental care. Further, the nurses also failed to alert the dental staff of Plaintiff's need for assistance. Based on these allegations, Plaintiff may proceed with his deliberate indifference claims in **Count 1** against the following nurses: Mall, Laing, Marshall, Chatten, Tripp, Williams, Gregson, Megee, Ron, Suzy, Martha, Brenda, Keisha, Shellby, and Nurse John Doe #3. Of course, Plaintiff must identify Nurse John Doe #3 by name before this individual can be served with notice of the action.

Turning to the dental providers, Dr. Osemeyer is the dentist who saw Plaintiff after his tooth broke off. Plaintiff states that Dr. Oswald is the dental medical director. (Doc. 2, p. 3). According to Plaintiff, he submitted a number of written requests for urgent medical care over a period of 3 weeks, yet was never called in for evaluation or treatment by a dental professional until his tooth broke off. These facts suggest deliberate indifference on the part of the prison health official(s) who failed to take action on Plaintiff's urgent and repeated requests for care, thus delaying necessary medical attention. It is not clear where Osemeyer and/or Oswald fit in to the chain of officials who were responsible for scheduling dental care. The First Amended Complaint suggests that Osemeyer and/or Oswald may have received Plaintiff's dental requests, yet failed to take steps to provide care for his serious condition. To be sure, Plaintiff was finally given antibiotics and pain medication (presumably at Osemeyer's direction) following his emergency visit when his tooth broke off. However, if the facts show that Osemeyer and/or

Oswald bore responsibility for the delay in providing Plaintiff with this basic treatment, a deliberate indifference claim may lie against them.

Osemeyer's comment that the only dental treatment Plaintiff would receive would be the extraction of all his teeth may support an Eighth Amendment claim, depending on what treatment was necessary for Plaintiff's broken tooth. Notably, Osemeyer's refusal to grant Plaintiff's requests for an MRI and a partial denture do not necessarily support a deliberate indifference claim. An inmate does not have the right under the Eighth Amendment to dictate his own treatment or medical tests. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further factual development will be necessary before the significance of these treatment decisions can be evaluated.

Based on Plaintiff's allegations, at this early stage of the case, **Count 1** may proceed against Osemeyer and Oswald, as well as the nurses, on his claims that necessary dental care was denied and delayed.

**Dismissal of Count 2 – Deliberate Indifference – Wexford Health Sources, Inc.**

Defendant Wexford Health Sources, Inc., ("Wexford") is a corporation that employs the Defendant Nurses, as well as Osemeyer and Oswald, and provides medical and dental care at the prison. However, it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

While Plaintiff lists Wexford as a Defendant, he does not point to any alleged policy or practice on the part of Wexford that caused the individual medical/dental providers to deny and

delay treatment for several weeks. The comments of two individuals indicated that Wexford has limited funds to spend on inmate dental care, however, this does not appear to be the driving force behind the long delay. Nurse Ron remarked that Wexford and the State were "on a budget" when he offered to go get some pliers and yank out Plaintiff's tooth himself. (Doc. 2, p. 24). This comment was in the context of Ron's judgment that Plaintiff's problem was not an emergency, and indicates Ron's insensitivity to Plaintiff's plight, rather than suggesting a policy reason for his failure to assist Plaintiff. Moreover, all of the other nurses similarly failed to take action to refer Plaintiff for dental care, without invoking a Wexford policy or practice as a reason for their inaction. To the contrary, the reasons given by nurses for refusing to help Plaintiff included statements that the nurse was not responsible for dental care; dental visits were on hold during the lockdown; Plaintiff's problem was not urgent or an emergency; Plaintiff needed to just put up with the pain until he could see a dentist; the dentist had not ordered any pain medication for him; and annoyance with Plaintiff's repeated complaints. Taken together, these allegations suggest deliberate indifference on the part of the individual nurses, but do not indicate that any of them failed to refer Plaintiff for dental care due to a Wexford policy or practice.

The only other mention of Wexford in Plaintiff's statement of claim is Dentist Osemeyer's remark that he "wasn't about to waste Wexford's money on Plaintiff" to provide him with a dental partial or an MRI. (Doc. 2, p. 29). This does suggest that a cost-saving policy could be the reason for denial of those two items. However, at this stage, these remarks do not support a deliberate indifference claim against Wexford. First, as discussed under Count 1, the denial of these specific treatments does not support a deliberate indifference claim, because an inmate cannot dictate his own treatment, and there is no factual support for the proposition that

10

either a partial or an MRI was necessary in order to treat Plaintiff's condition. Secondly, the substance of Plaintiff's deliberate indifference claim is the fact that he was denied *all* treatment, and got no referral for dental care, for 3 weeks while he suffered with serious symptoms. Whether or not Wexford would approve a partial or an MRI has nothing to do with that lengthy delay which is the subject of Count 1.

To summarize, Plaintiff's factual allegations regarding the delay and denial of dental care and pain medication between April 23 and May 18, 2017, do not support the proposition that a Wexford policy or practice caused the Defendants in Count 1 to violate Plaintiff's constitutional rights. Accordingly, the deliberate indifference claim against Wexford Health Sources, Inc., in **Count 2** shall be dismissed at this time without prejudice, for failure to state a claim upon which relief may be granted.

## Count 3 – Deliberate Indifference – Non-Medical Defendants

The same factors as outlined in Count 1 apply to evaluate whether a deliberate indifference claim is stated against Lt. Lee, Warden Lashbrooks, or McWilliams (mental health staff): Were these individuals aware that Plaintiff faced a serious risk of harm from his deteriorating and infected tooth, and did they take steps to mitigate the harm to Plaintiff?

Plaintiff spoke personally to Lt. Lee on May 8, 2017, showed Lee the dangling tooth, and complained that he was suffering great pain. Plaintiff asked Lt. Lee to help him get attention from a health care provider. Lee responded by saying that if the nurse didn't do anything, there was nothing he could do, since he is not a dentist. (Doc. 2, p. 23). Lee was thus aware of Plaintiff's symptoms but did nothing to request medical or dental help for him. Plaintiff has sufficiently pled a deliberate indifference claim against Lee that shall go forward in Count 3.

On May 10, 2017, Plaintiff wrote an emergency grievance and forwarded it to Warden

Lashbrooks. (Doc. 2, p. 25). Because Plaintiff never received any response, it is unknown whether Lashbrooks actually saw the emergency grievance. However, such emergency matters are ordinarily sent to the warden's attention. If Lashbrooks received the emergency grievance, yet did nothing, those facts would support a deliberate indifference claim. Construing the facts in Plaintiff's favor, at this stage, the claim in Count 3 against Lashbrooks shall also proceed.

McWilliams met with Plaintiff on May 13, 2017, in response to Plaintiff's request to speak to a crisis team member, after his dental pain and other symptoms had continued unaddressed for nearly 3 weeks. After Plaintiff explained his problem and his ongoing unsuccessful attempts to get treatment, McWilliams told Plaintiff he would make a referral to the dentist. (Doc. 2, pp. 26-27). Plaintiff claims, however, that McWilliams never made the referral. Taking Plaintiff's factual allegations as true, McWilliams' lack of action after being informed of Plaintiff's serious condition may amount to deliberate indifference.

The deliberate indifference claims in **Count 3** against Lee, Lashbrooks, and McWilliams shall proceed for further consideration.

### Count 4 - Retaliation

In the First Amended Complaint, Plaintiff labeled this severed portion of the action as "Deliberate Indifference/Retaliation." (Doc. 2, p. 19). However, in his statement of claim, he did not identify which Defendants allegedly took some adverse action toward him in retaliation for some protected First Amendment Activity. Nonetheless, the Court shall evaluate whether the pleading states a viable retaliation claim.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement, activity which is protected under the First Amendment. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v.*

*Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

The following incidents may be connected to Plaintiff's claim that he suffered retaliation. On May 10, 2017, Nurse Laing threatened to write Plaintiff a ticket and send him to segregation if he kept on talking to her about the tooth. (Doc. 2 p. 24). Later on May 10, Plaintiff sent his emergency grievance to Warden Lashbrooks. (Doc. 2, p. 25). On May 15, Laing said she had heard about Plaintiff's grievance on her. After that conversation, Laing refused to give Plaintiff any pain medication on May 15 and 16. (Doc. 2, p. 28). Before Plaintiff wrote the grievance, Laing had previously refused to provide any pain medication on May 4, 8, 9, 10, and 11, just as all the other nurses had done. On May 16, Nurse Keisha also mentioned Plaintiff's grievance. Keisha said she did not care about the grievance, and she continued to ignore Plaintiff's complaints regarding his tooth on May 16 and 17, just as she had done earlier on May 8 and 11, 2017. *Id*. On May 19, 2017, Nurse Shellby told Plaintiff that he "would regret writing a grievance on her." (Doc. 2, p. 30). This comment was made after Plaintiff had received some treatment for losing the tooth, and he does not describe any further incident of Shellby denying treatment to him.

Shellby's general threat that Plaintiff would "regret" filing the grievance, like Laing's

threat to send Plaintiff to segregation, does not violate the Constitution.  Verbal threats such as these do not constitute adverse "actions" that would support a retaliation claim.  *See Bridges*, 557 F.3d at 552 (plaintiff must experience "an adverse *action* that would likely deter [his] protected activity in the future") (emphasis added).  Plaintiff does not relate any action that Shellby took against him after she made the threat.  He thus fails to state a retaliation claim against Shellby upon which relief may be granted.

Turning to Laing and Keisha, if these nurses had denied Plaintiff pain medication or treatment for his tooth *because* he filed a grievance, that sequence of events would support a claim for retaliation.  The difficulty here is that Laing and Keisha continually denied Plaintiff treatment or a referral for his dental problems, both before and after he filed his grievance over the denial of care.  Clearly, their refusal to treat him before they were aware of the grievance cannot be attributed to a retaliatory motive.  It is plausible that Laing's and Keisha's denial of treatment after they learned of Plaintiff's grievance could have been motivated in part by a desire to retaliate against him.  Further development of this claim will be required in order to attempt to determine whether a retaliatory motive played a role in the denial of treatment from May 15-17, 2017.  Accordingly, Plaintiff's retaliation claim in **Count 4** shall proceed for further review against Laing and Keisha only.

### Identification of Unknown Defendant

As noted above, Plaintiff may proceed with his claim in Count 1 against Nurse John Doe #3.  However, this Defendant must be identified with particularity before service of the First Amended Complaint can be made on him.  Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have

the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Lashbrooks is already named as a Defendant, and shall be responsible for responding to discovery (formal or otherwise) aimed at identifying the John Doe Nurse #3. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Defendant Nurse John Doe #3 is discovered, Plaintiff shall file a motion to substitute the newly identified Defendant in place of the generic designation in the case caption and throughout the Complaint.

### Pending Motion

The motion for preliminary injunction (Doc. 3) relating to Plaintiff's ongoing need for dental/medical care for his infected tooth, shall be referred to the United States Magistrate Judge.

### Disposition

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendant **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED** from this action without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for preliminary injunction (Doc. 3) is hereby **REFERRED** to **United States Magistrate Judge Stephen C. Williams**, who shall resolve the request for injunctive relief as soon as practicable, and issue a report and recommendation. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Williams.

As to **COUNTS 1, 3, and 4**, the Clerk of Court shall prepare for Defendants **MALL, LAING, MARSHALL, CHATTEN, TRIPP, WILLIAMS, GREGSON, MEGEE, OSEMEYER, RON, OSWALD, SUZY, MARTHA, BRENDA, KEISHA, SHELLBY, LEE,**

**McWILLIAMS, LASHBROOKS,** and **NURSE JOHN DOE #3 (once identified)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, copies of the following documents: the Memorandum and Order of May 31, 2017 (Doc. 1), the First Amended Complaint (Doc. 2), the motion for preliminary injunction (Doc. 3), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendant **NURSE JOHN DOE #3** until such time as Plaintiff has identified him by name in a properly filed motion for substitution of party. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* was granted in the original case (No. 17-cv-494-SMY, and no additional fee is assessed for this severed case at this time.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 5, 2017**

s/ MICHAEL J. REAGAN  
Chief Judge  
United States District Court