IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-574-MJR-SCW |
| | ) |
| ALLYCE MOLL, AIMEE LANG, NICOLE MARSHALL, TARA CHADDERTON, BRANDY TRIPP, AUGUSTA WILLIAMS, LEE GREGSON, HEATHER McGHEE, CRAIG ASSELMEIER, RON SKIDMORE, SUSAN KIRK, MARTHA OAKLEY, BRENDA OETJEN, LAKESHA HAMBY, SHELBY DUNN, BEN DAHLEM, TRACY LEE, JAELEN McWILLIAMS, JACQUELINE LASHBROOK, and STEVEN NEWBOLD, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**REAGAN, Chief Judge:**

Plaintiff Ted Knox's claims in this case were filed on May 24, 2017, as part of an amended complaint in *Knox v. Butler, et al.* (Case No. 17-cv-494-SMY-RJD). Knox alleges that Defendants were deliberately indifferent to his serious dental needs. All Defendants except Ben Dahlem, who has not been served, filed motions for summary judgment on the issue of exhaustion of administrative remedies (Docs. 77, 80). Knox responded to the motions (Doc. 84), and Magistrate Stephen C. Williams held an evidentiary hearing on June 4, 2018.

Following the hearing, Defendants filed supplemental briefs (Docs. 111, 113), as directed by Judge Williams, and Knox responded (Doc. 114). After briefing was complete, Judge Williams issued a report & recommendation (Doc. 120) on August 7, 2018, recommending that the undersigned grant the motions for summary judgment. Judge Williams also ruled that Knox's motion to amend his complaint was futile in light of his failure to exhaust administrative remedies and recommended that this case be dismissed without prejudice. Knox timely objected to the report & recommendation (Doc. 121), challenging certain factual findings made by Judge Williams and requesting leave to amend his complaint.

Timely objections having been filed, the Court undertakes *de novo* review of the portions of the report to which Plaintiff specifically objected. **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b).** The undersigned can accept, reject, or modify Magistrate Judge Williams' recommendations, receive further evidence, or recommit the matter with instructions. *Id.* For the reasons delineated below, the undersigned **ADOPTS** Magistrate Judge Williams' recommendations, **GRANTS** the motions for summary judgment (Docs. 77, 80), and **DENIES** Knox's motion for leave to file first amended complaint (Doc. 98).

## BACKGROUND

Plaintiff Ted Knox is incarcerated at Menard Correctional Center. He alleges that he began having issues with his two front teeth on April 23, 2017, and that he submitted a request for dental care. The pain caused by his teeth made it hard for him to eat, brush his teeth, and talk, and it affected his sleep and other daily activities. One of his front

teeth became loose and dangled from his mouth. When he awoke on April 30, 2017, and found blood on his pillow, Knox submitted another urgent request for dental care. He continued submitting request slips and also showed his dangling tooth and described his symptoms to several nurses, all in attempt to receive care.

According to Knox, he brought his issues to the attention of Defendants Lee, Dunn, Lang, Tripp, Oakley, Oetjen, Moll, Chadderton, Marshall, McGhee, Hamby, Kirk, Skidmore, Dahlem, Gregson, and Williams throughout late April and into May 2017. Knox alleges that he wrote an emergency grievance to Warden Lashbrook on May 10, 2017, but that he never received a response. He spoke to Defendant McWilliams on May 13, 2017, after requesting a crisis team, but he says she never made a promised referral to the dentist. His tooth broke off on May 18, 2017, and he was sent to see Dr. Asselmeier, the dentist at Menard Correctional Center. Knox asked for a partial and for an MRI to determine the extent of any infection in his mouth, but Asselmeier refused the request, instead telling Knox his only option was to have all of his teeth extracted.

Defendants challenge whether Knox exhausted his administrative remedies prior to bringing suit. The record reflects several attempts to grieve the dental issue, both before and after Knox filed suit. It is not disputed that Knox submitted an emergency grievance directly to the ARB on May 10, 2017, and that it was received on May 15, 2017. The grievance referenced the denial of dental services since April 23, 2017, for Knox's front teeth. The grievance included a letter indicating that Defendant Lang threatened to send him to segregation if he continued to complain about his dental needs. He also asked that the ARB process his grievance because his grievances at

3

Menard had gone missing in the past. The ARB returned the grievance, citing Knox's failure to include a response from a counselor, grievance officer or the CAO at Menard.

According to Knox, he submitted a duplicate of the grievance to Warden Lashbrook on May 10, 2017, and never received a response. To support his assertion, Knox argues that he saw his counselor on May 16, 2017, informed him of his dental problems, and gave him a copy of the May 10, 2017 grievance. His counselor indicated that he would attempt to locate the grievance and let Knox know the status of it. Knox says that he submitted a written request for the status to Warden Lashbrook on May 17 and 19, 2017, and that he followed up with his counselor on May 17, 2017, as well.

Following the June 4, 2018 evidentiary hearing, Defendants submitted a copy of Knox's Cumulative Counsel Summary ("CHAMPS") records. The records do not show that Knox filed any emergency grievance in May 2017. The records also indicate that there was no discussion of a grievance during the May 16 meeting between Knox and the counselor. The notes of the meeting indicate that Knox had no requests for the counselor at the time, contradicting his description of the meeting. During a July 6, 2017 meeting with the counselor, Knox inquired about a transfer-related grievance, but there's no mention in the CHAMPS of an emergency grievance submitted at Menard in May 2017 related to Knox's dental issues.

On June 18, 2017, after filing suit, Knox submitted a grievance directly to the ARB regarding his dental care. A letter accompanied the grievance and explained that his grievances at the prison go unheard or are lost. It was received on June 26, 2017, and returned to Knox on July 18, 2017, because he failed to include a copy of the responses

4

from the grievance officer and the CAO at Menard. The June 18, 2017 grievance was also sent to Knox's grievance counselor. The counselor response indicates that the staff involved in the allegations denied Knox's claims. Knox was scheduled for a dental appointment on May 11, 2017, but the appointment was rescheduled due to a lockdown. Knox was seen for his dental issues on May 18, 2017, and his problems were addressed at that time. The grievance officer recommended that the grievance be denied, noting that Dr. Asselmeier saw Knox on May 18 and gave him antibiotics and Tylenol. Dr. Asselmeier told Knox that a partial denture was not a treatment option, and Knox requested a second opinion. Knox saw Dr. Newbold on June 20, 2017, for a follow-up appointment and was scheduled for another appointment in July 2017. Unable to confirm any staff misconduct, the grievance officer recommended denying the grievance, and the CAO concurred on July 14, 2017. Knox appealed the decision to the ARB. The ARB received the grievance on August 1, 2017, and ruled on the merits of it on October 4, 2017. The ARB denied the grievance, finding that Menard appropriately addressed Knox's concerns.

On June 19, 2017, Knox submitted a grievance complaining that his dental records were illegible. The counselor rejected the grievance because the issue was not grievable. The grievance officer denied the grievance on July 13, 2017. The CAO concurred on July 21, 2017. Knox appealed the grievance to the ARB on July 26, 2017, and the ARB denied it on October 4, 2017.

On August 4, 2017, Knox submitted a grievance related to a call-pass to see a dentist that was denied. The grievance counselor recommended denying the grievance

5

because the call-pass was canceled due to a lockdown. The grievance officer denied the grievance on August 11, 2017, and the CAO concurred on August 17, 2017. Knox appealed the denial on August 17, 2017. The ARB received the appeal on August 28, 2017, and denied it on October 4, 2017.

**LEGAL STANDARDS**

As the review of the motion for summary judgment is *de novo*, the Court conducts an "independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion," and "is free, and encouraged, to consider all of the available information about the case when making this independent decision." *Mendez v. Republic Bank*, **725 F.3d 651, 661 (7th Cir. 2013).**

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010)**. Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added)**. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th**

6

**Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by

(or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

A. **Illinois Exhaustion Requirements**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq***.** The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. **20 Ill. Admin. Code §504.810(a).** The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(c).** Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. **20 Ill. Admin. Code §504.820(a).** The grievance officer will review the grievance and provide a written response to the inmate. **20 Ill. Admin. Code §504.830(a).** "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(e).** "The

Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision. " **20 Ill. Admin. Code §504.850(a).** The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(d).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(e).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill.**

9

**Admin. Code §504.840(a).** If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. **20 Ill. Admin. Code §504.840(b).** If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." **20 Ill. Admin. Code §504.840(c).** When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." **20 Ill. Admin. Code §504.850(f).**

ANALYSIS

Knox filed suit in *Knox v. Butler, et al*, Case No. 17-cv-494-SMY-RJD, on May 24, 2017. Defendants argue that Knox filed suit before exhausting his administrative remedies and that this action should be dismissed because he cannot file suit in anticipation that his administrative remedies will soon be exhausted. *See, e.g.*, **Ford, 362 F.3d at 398**. At issue is whether Knox filed the May 10, 2017 emergency grievance with Warden Lashbrook at Menard and never received a response to it because administrative remedies are deemed "exhausted when prison officials fail to respond to inmate grievances." *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**. If the grievance was not properly submitted at Menard and unanswered by prison officials, then Knox did not exhaust his administrative remedies prior to filing suit.

Knox claims that the May 10, 2017 grievance sent directly to the ARB was also sent to Warden Lashbrook at the same time. While the ARB received the grievance, the

warden did not. The records of Knox's grievances do not support his contention that the grievance was filed at Menard on either an emergency or non-emergency basis, nor do they support his claims about discussing the grievance with his counselor. The records do reflect later grievances that were received and processed and also later conversations with his grievance counselor, but there is no support for Knox's claims regarding the May 10, 2017 grievance. The notes regarding the May 16, 2017 meeting with his counselor indicate that Knox had no requests at that time. Later meeting notes reflect Knox asking about unrelated grievances. The undersigned does not find Knox's position regarding asking about an emergency grievance filed May 10, 2017 during the May 16, 2017 meeting with his counselor credible or supported by the record.

The May 10 grievance sent directly to the ARB is the only dental-related grievance submitted before Knox filed suit. His note to the ARB suggests that he hoped to avoid the institutional grievance process because he felt earlier grievances had gone missing or were not responded to. He did not refer to the grievance enclosed with the letter as a duplicate or mention any copy also sent to the warden at Menard. The grievance sent directly to the ARB did not fully exhaust Knox's administrative remedies because it was returned to Knox with a request for additional information. It also was submitted only fourteen days before Knox filed suit, a period of time that did not allow it to be exhausted.

Considering the record and the evidence as a whole, there is no support for Knox's contention that he submitted an emergency grievance regarding his dental needs to the warden on May 10, 2017, and that he did not receive a response. While

Knox submitted grievances related to his dental issues and received responses, none of the grievances were submitted before Knox filed suit on May 24, 2017. Accordingly, the Court **FINDS** that Knox failed to exhaust his administrative remedies prior to filing suit. Because he has not exhausted his administrative remedies, Knox's motion for leave to amend his complaint is rendered moot. Any attempt to amend the complaint is futile, as all claims alleged in the proposed document would face dismissal due to Knox's failure to exhaust his administrative remedies.

## Conclusion

For the above-stated reasons, Plaintiff Ted Knox's objections to the report & recommendation are **OVERRULED**. The Court **GRANTS** Defendants' motions for summary judgment (Docs. 77, 80) and **DENIES** Plaintiff Ted Knox's motion for leave to file first amended complaint (Doc. 98). While Defendant Dahlem has yet to be served, the Court **FINDS** that Knox similarly failed to exhaust his administrative remedies as to the claims against Dahlem. Accordingly, all claims are **DISMISSED without prejudice** due to Knox's failure to exhaust administrative remedies prior to filing suit. The Clerk of Court shall close this case.

**IT IS SO ORDERED**.

DATED: September 25, 2018

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**